Thomas J. Seery, Esquire
Attorney I.D. No. 128552015
Goldberg Segalla, LLP
1700 Market Street, Suite 1418
Philadelphia, PA 19103
(267) 519-6800 (PH)
(267) 519-6801 (FAX)
tseery@goldbergsegalla.com
*Attorney for Plaintiff*
*Greenwich Insurance Company*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| GREENWICH INSURANCE COMPANY, | |
| Plaintiff, | Civil Action No.: |
| v. | |
| BLUELAND TITLE AGENCY, INC. | |
| Defendant. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Greenwich Insurance Company by and through its attorneys, Goldberg Segalla LLP, hereby brings this Complaint for Declaratory Judgment against Defendant Blueland Title Agency, Inc.

## THE PARTIES

1.  Plaintiff Greenwich Insurance Company ("Greenwich") is incorporated in Delaware and has its principal place of business at 70 Seaview Avenue, Stamford, Connecticut 06902.

2. Defendant Blueland Title Agency, Inc. ("Blueland") is incorporated in New Jersey and has its principal place of business at 460 Bergen Boulevard, Palisades Park, New Jersey, 07650.

## JURISDICTION AND VENUE

3. This Court has personal jurisdiction over the defendant because it either resides in New Jersey or engaged in activities in New Jersey that give rise to this action.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 by reason of the diversity of citizenship between the parties and the amount in controversy exceeding $75,000, exclusive of interest and costs.

5. Venue is proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391(b) because the defendant resides in New Jersey and the events giving rise to this insurance coverage dispute occurred in New Jersey.

## THE MATTER IN DISPUTE

6. In this insurance coverage dispute, Greenwich seeks a declaratory judgment that it has no obligation under an insurance policy issued by Greenwich to Blueland to defend or indemnify Blueland in connection with an underlying lawsuit against Blueland arising out of a fraudulent wire transfer in which funds were converted, stolen and misappropriated from their rightful owner.

7. In the alternative, Greenwich seeks a declaratory judgment that any obligation it has to defend and indemnify Blueland in the underlying lawsuit is capped at $100,000.

## THE POLICY

8. Greenwich issued a Title Agent Professional Liability – Errors and Omissions Insurance Policy to Blueland bearing policy number TAG0151476, with a policy period of January

13, 2019 to January 13, 2020 (the "Policy").  A true and correct copy of the Policy is attached as hereto Exhibit A.

9. The Policy states as follows:

### B. WHAT IS COVERED

Subject to all terms and conditions of this policy, the **Company**[1] will pay on the **Insured's** behalf **damages** and **defense expenses** arising out of a **claim** first made against the **Insured** during the **policy period**, and reported to the **Company** in writing during the **policy period**, by reason of an actual or alleged negligent act or omission or **personal injury**, in the performance of **professional services** that are alleged to have occurred on or after the **retroactive date** of this policy.

(Exhibit A.)

10. The Policy contains Exclusion 14, which states as follows:

### H. EXCLUSIONS

This insurance does not apply to any **claim**:

\*   \*   \*

14. based on or arising out of:

   a. the commingling, improper use, theft, stealing, conversion, embezzlement or misappropriation of funds or accounts;

   b. sums received by any **Insured** or credited to any **Insured's** account; or

   c. fees, premium, taxes, **claims**, commissions or brokerage monies.

(Exhibit A.)

11. The Policy contains Endorsement No. 6, Plus+ Advantage Endorsement, which provides, in relevant part:

### PLUS+ ADVANTAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

---

[1] Terms in bold type are defined in the Policy.

**TITLE AGENT PROFESSIONAL LIABILITY – ERRORS AND OMISSIONS INSURANCE**

In consideration of the premium charged, the following changes apply:

**I.    THEFT OF FUNDS COVERAGE SUBLIMIT**

Sublimit of Liability: $100,000 in the aggregate for the **policy period**.

   **A.  Insuring Agreement**

   1.  Subject to all Terms and Conditions of this policy and the Sublimit of Liability set forth in this endorsement, the **Company** will pay on the **Insured's** behalf **damages** and **defense expenses** arising out of the loss of the funds of others in the **Insured's** care, custody or control as a result of theft, stealing, conversion or misappropriation.  However, coverage shall not apply to the theft, stealing, conversion or misappropriation of funds by an **Insured** or by a **Person Affiliated with an Insured** or **Entity Affiliated with an Insured** or to loss of the **Insured's** own funds.

   2.  The Theft of Funds coverage provided by this endorsement applies only to loss of funds first discovered and reported to the **Company** during the **policy period**, provided that no **Insured** had knowledge of the theft, stealing, conversion or misappropriation of such funds prior to the effective date of this policy.

   3.  **Defense Expenses** incurred in connection with a loss of funds shall be part of and not in addition to the Sublimit of Liability provided under this coverage.

   **B.  DEFINITIONS**

   Section **A. DEFINITIONS** is amended to add the following:

   1.  **Personal Affiliated with an Insured** shall mean any person related to an **Insured** by birth, adoption, marriage, or civil union (including spouses, civil union partners, parents, grandparents, children, grandchildren, siblings, cousins, nieces, nephews, aunts or uncles).

   2.  **Entity Affiliated with an Insured** shall mean any entity controlled by an **Insured** or by a **Person Affiliated with an Insured** or any entity in which any **Insured** or a **Person Affiliated with an Insured** has or at any time had a legal or beneficial interest.

4

    **C. EXCLUSIONS**

        Section **H. EXCLUSIONS**, Exclusion 14. is deleted and replaced by the following:

        Solely for purposes of this Theft of Funds coverage included in this endorsement, policy **Exclusion 14** is deleted and replaced by the following:

        **14.** based on or arising out of:

            **a.** the commingling, improper use or embezzlement of funds or accounts;
            **b.** loss of fees, premiums, taxes, **claims**, commissions or brokerage monies.

    **D. CONDITIONS**

        Section **I ADDITIONAL TERMS AND CONDITIONS** is amended to add the following:

        **1.** It is understood and agreed that the **Company** shall not be liable under this endorsement for loss of funds for which an **Insured** had coverage under any other insurance policy.

        **2.** As a condition precedent to the coverage afforded by this endorsement, the **Named Insured** shall give written notice to the **Company** as soon as practicable and in no event later than seven (7) days after any **Insured** becomes aware of a loss of the funds of others in the care, custody or control of the **Insured**.

(Exhibit A.)

## THE UNDERLYING LITIGATION & EVENTS GIVING RISE TO THIS DISPUTE

    12. On or about May 1, 2019, a Complaint was filed against Blueland in the Superior Court of New Jersey, Chancery Division, Essex County, captioned *Kim Cheung, et al. v. Blue Land Title Agency, Inc.* [sic]*, et al.* (the "Underlying Lawsuit"). A true and correct copy of the Complaint in the Underlying Lawsuit (the "Underlying Complaint") is hereto attached as Exhibit B.

    13. The Underlying Lawsuit arises out of the conversion, theft and misappropriation of funds due to a fraudulent wire transfer that occurred on or about March 26, 2019.

14. In the Underlying Complaint, the plaintiffs allege that they engaged in commercial real estate transactions involving multiple commercial properties. (Exhibit B.)

15. The real estate transactions involved the purchase of a property located in Montclair, New Jersey and refinancing of another property located in Verona, New Jersey.

16. Blueland provided title closing services in connection with the refinancing aspects of the transactions under which an existing mortgage on the Verona property (the "Rispoli Mortgage") would be discharged. (Exhibit B, at ¶ 31.)

17. Noah Bank was a lender of funds for aspects of the transactions, including the funds required to discharge the Rispoli Mortgage. (Exhibit B, at ¶ 27.)

18. In the Underlying Complaint, the plaintiffs allege that on March 15, 2019, prior to the closing of the refinancing of the property in Verona, counsel for the mortgage holder on the Verona property, Greenbaum Rowe, issued a payoff letter to Blueland directing that payment to satisfy and discharge the Rispoli Mortgage be made by check payable to Natale Rispoli and remitted to him in Bend, Oregon. (Exhibit B, at ¶ 33).

19. The plaintiffs in the Underlying Lawsuit further allege that on March 22, 2019, Blueland received a "bogus letter" purporting to be from Greenbaum Rowe, containing "bogus wire instructions" for the payment to discharge and satisfy the Rispoli Mortgage. (Exhibit B, at ¶¶ 36-38.)

20. The plaintiffs allege that Blueland followed the "bogus wire instructions" and "wired or caused the wire of funds that were intended to pay-off the Rispoli Mortgage." (Exhibit B, at ¶ 39.)

21. The plaintiffs allege that the funds, having been wired to a fraudster pursuant to bogus wire instructions, were never received by Greenbaum Rowe or Natale Rispoli. (Exhibit B, at ¶ 42-43.)

22. The plaintiffs allege in the Underlying Complaint that they have suffered losses in excess of $304,000 as a result of the conversion, theft, stealing and misappropriation of funds. (Exhibit B, at ¶¶ 54, 57.)

23. Because the claim against Blueland arises out of the commingling, improper use, theft, stealing, conversion, embezzlement, or misappropriation of funds or accounts, the Policy does not provide defense or indemnity coverage for the claims against Blueland in the Underlying Lawsuit.

24. Prior to the fraudulent wire transfer, the funds were in the possession of Noah Bank.

25. Blueland has explained that it received fraudulent wiring instructions on multiple occasions in connection with real estate transactions discussed in the Underlying Complaint, including via four emails on March 15, 2019, and another email on March 21, 2019.

26. Blueland has explained that the fraudster sent these emails from a fraudulent email address, nisaacson@greenlbaum.com, which was created to appear to come from the mortgage holder's attorney's actual email address, nisaacson@greenbaumlaw.com.

27. Blueland provided the bogus wire instructions to Noah Bank and instructed Noah Bank to wire funds pursuant to the bogus wire instructions.

28. Noah Bank executed the wire transfer pursuant to the bogus wire instructions and transferred funds held in Noah Bank's account to the perpetrator of the fraud.

29. The funds converted, stolen and misappropriated in the fraudulent scheme were not in the care, custody or control of Blueland prior to being wired to the fraudster. Rather, the funds were in the care, custody and control of Noah Bank.

30. Accordingly, because the funds were not in the care, custody or control of Blueland, the coverage provided under the Policy's Plus+ Advantage Endorsement does not apply to the claim, and Exclusion 14 of the Policy bars defense and indemnity coverage for the claims asserted against Blueland in the Underlying Lawsuit.

### THE PARTIES' DISPUTE CONCERNING COVERAGE FOR THE UNDERLYING LAWSUIT

31. On April 9, 2019, Blueland provided notice to Greenwich of a potential claim arising out of the March 26, 2019 loss of funds due to the fraudulent wire transfer and requested coverage under the Policy.

32. In an April 19, 2019 letter, Blueland stated that the loss of funds "clearly arises out of the negligence or omission from Blueland" such that coverage is available under the Policy subject to the $1,000,000 policy limit.

33. On May 1, 2019, Blueland provided notice to Greenwich of the Underlying Lawsuit.

34. In a letter dated May 3, 2019, Greenwich informed Blueland that it would defend Blueland in the Underlying Lawsuit subject to a reservation of rights and pursuant to the Plus+ Advantage Endorsement's $100,000 sublimit for "the loss of the funds of others in [Blueland's] care, custody or control as a result of theft, stealing, conversion or misappropriation."

35. Greenwich's agreement to provide a defense to Blueland pursuant to the Plus+ Advantage Endorsement, subject to a reservation of rights, was based on the allegation in the

Underlying Complaint that Blueland followed the bogus wire instruction and "wired or caused the wire of funds that were intended to pay-off the Rispoli Mortgage." (Exhibit B, ¶ 39.)

36. This allegation triggered a Greenwich's duty to defend because the allegation that Blueland "wired" the funds suggests that the funds were in Blueland's "care, custody or control" prior to the theft of the funds.

37. Notwithstanding the allegation in the Underlying Complaint, the funds that were converted, stolen and misappropriated were not in the care, custody or control of Blueland. Rather, the funds were in the care, custody and control of Noah Bank.

38. The claims against Blueland in the Underlying Lawsuit seek recovery of damages in the amount of at least $304,000, which exceeds the Plus+ Advantage Endorsement's $100,000 sublimit.

39. Exclusion 14 of the Policy bars coverage for the claims asserted against Blueland in the Underlying Lawsuit because the claims arise out of the theft, stealing, conversation or misappropriation of funds that were not within the "care, custody or control" of Blueland.

40. In the alternative, to the extent it is determined that the converted, stolen and misappropriated funds were within Blueland's "care, custody or control," defense and indemnity coverage for the claims asserted against Blueland in the Underlying Lawsuit is subject to the $100,000 sublimit of the Plus+ Advantage Endorsement because the claims arise out of the loss of funds as a result of theft, stealing, conversion or misappropriation.

41. Blueland contends that the full policy limits of $1,000,000 apply to the claims asserted against it in the Underlying Lawsuit.

42. Greenwich disagrees with Blueland's contention.

43. There is an actual dispute between Greenwich and Blueland regarding whether the Policy provides any coverage for the claims asserted against Blueland in the Underlying Lawsuit.

44. Furthermore, to the extent that the Policy provides coverage for the claims asserted against Blueland in the Underlying Lawsuit, there is a dispute between Greenwich and Blueland regarding whether the applicable policy limits for the claims are $1,000,000 or $100,000.

45. The matter presents a real and actual controversy that is ripe for judicial determination. A declaratory judgment is an appropriate remedy because the determination sought will resolve the controversy between the parties.

### COUNT I
### DECLARATORY JUDGMENT – 28 U.S.C. §2201

46. Paragraphs 1 through 45 above are incorporated herein by reference.

47. Greenwich does not have a duty to defend or indemnify Blueland for the claims asserted against Blueland in the Underlying Lawsuit because the funds at issue in the fraudulent wire transfer were not in the "care, custody or control" of Blueland, and coverage is excluded by Exclusion 14 of the Policy.

**WHEREFORE**, Greenwich Insurance Company respectfully requests that this Honorable Court enter judgment in favor of Greenwich Insurance Company declaring that it has no obligation under the Policy to defend or indemnify Blueland in the Underlying Lawsuit.

### COUNT II
### DECLARATORY JUDGMENT – 28 U.S.C. §2201

48. Paragraphs 1 through 47 above are incorporated herein by reference.

49. In the alternative, to the extent it is determined that the funds at issue in the fraudulent wire transfer were in the "care, custody or control" of Blueland (which Greenwich denies), the Policy's Plus+ Advantage Endorsement applies and therefore the $100,000 sublimit

is the maximum insurance coverage available to defend and indemnify Blueland in the Underlying Lawsuit.

**WHEREFORE**, to the extent that it is determined that the Policy provides coverage for the claims asserted against Blueland in the Underlying Lawsuit, Greenwich Insurance Company respectfully requests that this Honorable Court enter judgment in favor of Greenwich Insurance Company declaring that the maximum limit of insurance coverage available to defend and indemnify Blueland in the Underlying Lawsuit is $100,000, as provided by the Policy's Plus+ Advantage Endorsement.

Dated: May 24, 2019                                Respectfully submitted,

**GOLDBERG SEGALLA, LLP**

_____
Thomas J. Seery
NJ ID: 128552015
1700 Market Street, Suite 1418
Philadelphia, PA 19103
(267) 519 -6800 (PH.)
(267) 518 – 6801 (FAX)
tseery@goldbergsegalla.com
*Attorney for Plaintiff*
*Greenwich Insurance Company*